(36 South. 635.)

No. 15,046.

STOCKWELL et al. v. PERRIN.

(April 25, 1904.)

**DONATIONS INTER VIVOS—RIGHTS OF DONOR'S HEIRS—ENFORCEMENT OF LEGITIME—THIRD POSSESSORS.**

1. When property donated by act inter vivos by a father or mother to a person not an heir is sold by the latter, the third possessor, when proceeded against by the forced heirs of the donor for enforcement of their legitime upon the property itself, can repel the demand by offering to pay the heirs their money.

2. The third possessor owes fruits or rents only from judicial demand.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Alfred Dillingham Land, Judge.

Action by Mrs. A. B. Stockwell and another against W. C. Perrin. From a judgment for plaintiffs, defendant appeals. Amended and affirmed.

Alexander & Wilkinson, for appellant. Hall & Jack, for appellee W. S. Haven. Sidney Levy Herold and Henry Hunsicker, for appellee Stockwell.

### Statement of the Case.

NICHOLLS, J. The plaintiff Annie B. McCormick, wife of John J. Stockwell, William B. McCormick, and Wilhelmine McCormick are the sole descendants and forced heirs of Mrs. M. D. C. Cane.

Mrs. Cane's first husband was one William Bennett. He and James H. Cane were partners in the commercial firm of Bennett & Cane.

There was issue of the marriage—one child, William S. Bennett, Jr. The husband, William Bennett, died prior to 1838, and his widow, in 1838, married the surviving partner, J. H. Cane. Two children—J. H. Cane, Jr., and M. T. Cane—were born of this second marriage. J. H. Cane, Jr., died without issue. M. T. Cane married McCormick. William S. Bennett, Jr., died without issue, after the birth of the Cane children in 1847. The firm of Bennett & Cane were one of the seven purchasers of the property of the Shreveport Town Company from Larkin Edwards.

The property of that company was partitioned among the joint owners on the 10th of May, 1843, after the dissolution of the firm of Bennett & Cane. Among the property allotted to the firm (represented by J. H. Cane, the surviving partner) were lots 5, 6, and 7 in block 16 of the town of Shreveport.

On July 20, 1869, Mrs. Cane donated lot No. 5 to the minor Mary Hatkinson. In the act it was declared that the donation was made without any warranty, the donor conveying just such title as she had. On the same day—July 20, 1869—Mrs. Cane donated lot No. 7 to the minor Mary Head, it being declared in the act that the donation was made without warranty, the donor conveying just such title as she had.

On the 8th of December, 1880, Mary Hatkinson, who had married Paul Lanauze, sold lot No. 5 under full warranty to W. S. Haven for $260.

On the 28th of December, 1881, the plaintiff Annie Stockwell, authorized by her husband, sold to W. S. Havens, under full guaranty of title, all her right, title, and interest in and to lot No. 5, block 16, in the city of Shreveport, for the sum of $1 cash.

On the 20th of December, 1881, S. B. McCutcheon, tutor of the minors Wilhelmine and William B. McCormick, petitioned the district court in Caddo, averring that Annie B. Stockwell, E. R. Connell, and the two minors were owners of lot No. 5, block 16, of the city of Shreveport (Connell owning the interest formerly owned by Mrs. M. D. C. Cane, the interest of Annie Stockwell and that of the two minors being that of coheirs), and that it was the wish of the said owners to effect a partition of said lot at private sale at its appraised value to be fixed by a family meeting, as contemplated by section 2359 of the Revised Statutes. He prayed for an order convening a family meeting in behalf of the minors to take the subject-matter into consideration, to appraise the property, and to fix the terms and conditions of the contemplated sale. The family meeting was ordered and held. The meeting recommended that the interest of the minors, if any there be, in lot 5, be sold at private sale, to effect a partition between the owners of the lot, and that the tutor be authorized to make title for the interests of the minors to any person giving the appraised price of such property, which price was fixed at the sum of $10, the interest being supposed to be two-ninths. The proceedings were homologated, and on the 29th of December, 1881, the tutor sold all the right, title, and interest of said minors in and to said lot No. 5, under full guaranty of title, to W. S. Haven for the sum of $10.

On the same day W. S. Haven sold lot No. 5 under full guaranty of title to E. R. Connell for the sum of $600. The act declared that payment was made at the time a former title had been made by Haven to Connell, but that Haven, having bought the claim or interest of the heirs of H. and M. J. McCormick to said property, he wished and intended by the act to convey to Connell all the right and title which he (Havens) had received from any source.

On the 29th of May, 1882, Edward R. Connell sold, with full guaranty of title, to William H. Johnson, said lot No. 5 and six feet off of the east side of lot No. 4 in block 16, Shreveport, with all the buildings and improvements thereon, for $4,000.

William H. Johnson sold the property under full warranty to W. C. Perrin for $3,000. Perrin died after the institution of the present action, leaving his widow as his residuary legatee, and as such she was, at her instance, made defendant in the suit.

It was admitted that Mrs. M. D. C. Cane died on the 11th of May, 1902, and that she was insolvent; also that all of the plaintiffs were over 21 years of age at the institution of the present suit.

The present suit was instituted on the 8th of May, 1903.

The plaintiffs allege themselves to be the owners of lot No. 5 of block 16 in the city of Shreveport, and aver that they are entitled to the possession of the same.

They set out in their petition the donations made by Mrs. Cane to Mary Hatkinson and to Mary Head, and that said donations were in excess of the property that she was enti-

tled to dispose of by gratuitous disposition; that each of said lots were worth $3,000; that, Mrs. Cane having left at her death three descendants, their legitime was one-third of each of these lots; that they were entitled to rents at the rate of $50 per month from May 11, 1902. They averred that W. C. Perrin was in possession of lot No. 5. They prayed that they be cited, and that judgment be rendered in their favor against him recognizing them as owners of said lot No. 5, block No. 16, of the city of Shreveport, free from all mortgages and debts, and that they be placed in possession of the property, with rents at the rate of $50 per month from May 11, 1902.

The defendant, Perrin, answered, and after pleading the general issue he admitted that he was in possession of the property, but denied that plaintiffs, or either of them, had any right, title, or interest therein. He then set out the chain of title under which he and his authors held the property back to and including Mary Hatkinson.

He averred that Mrs. Cane, the donor of Marie Hatkinson, acquired a community interest in the property as the wife of J. H. Cane; that J. H. Cane acquired it during the existence of the community between himself and his said wife.

He averred that the plaintiffs themselves had sold the property under full warranty to W. S. Haven, and that each and every one of the different vendees had sold in the same manner with guaranty of title. He averred that the property had been held in the actual possession of the different parties in good faith under conditions carrying with them the acquisition of title to the property by 10 years, which prescription he pleaded in bar of the action. He likewise pleaded in bar of the action the estoppel flowing from plaintiffs' position as vendors of the property to W. S. Haven.

He averred that he had made large and valuable improvements on the lot, as had others of the preceding vendors, amounting to more than $6,000, for which contingently he should have judgment.

He averred that plaintiffs at the very utmost could not claim more than one-third of the property, but he insisted that they were entitled to nothing.

He prayed to have the different vendors called in warranty, and contingently asked for judgment on the warranty.

Defendant filed a supplemental answer, in order, he said, to correct an error made by him in the original pleadings.

He averred that he had been in error in stating that the property in question was community property, and that it was acquired on May 10, 1843; that the truth was that the property was the separate individual property of the husband, J. H. Cane, and Mrs. J. H. Cane had never acquired any interest therein, and she did not have any interest to donate at the date of the alleged donation; that the property was acquired by J. H. Cane on February 4, 1837, prior to his marriage with Mrs. Cane, and the partition thereof created no new title in him, but simply allotted to him his interest acquired before in 1837. On the trial the plaintiffs urged that, the defendant deriving title from the same author as themselves, neither could dispute that title.

Defendant urges that, if plaintiffs have any rights in the premises, they were not for the ownership of the property, as that had passed by its sale, and the rights to the legitime had been cut off.

It was agreed between the parties that the question of rents and improvements in the event plaintiffs should recover should be left open for further adjudication.

The district court recognized and decreed the plaintiffs to be the owners of an undivided $5/48$ interest in and to lot No. 5, block 16, of the city of Shreveport, and rendered judgment in their favor to that effect against the defendant, with costs of suit. It further

rendered judgment in favor of the defendant, Perrin, against his warrantor, W. H. Johnson, in the sum of $271.74, with legal interest from May 11, 1902, and costs of suit.

It further rendered judgment in favor of W. H. Johnson against W. S. Haven, his warrantor, for $62.50, with costs.

It further decreed that all questions of rents and revenues and improvements be reserved for future adjudication. No amendment of judgment was asked.

Plaintiffs moved to dismiss the appeal on the ground that the matter in dispute was below the appellate jurisdiction of the Supreme Court.

The different vendors called in warranty were cited, and filed answers setting up their respective defenses and claims. G. W. Jack was appointed curator ad hoc representing W. S. Haven. He, among other defenses, urged the prescription of 10 years.

## Opinion.

We do not think the appeal should be dismissed. The plaintiffs in their petition claim the ownership of lot No. 5 in block 16 in the city of Shreveport in its entirety, with $50 monthly rental thereon. These pleadings were retained throughout. The motion to dismiss is rejected.

The fact that in the act of donation made by Mrs. Cane to Mary Hatkinson she described the object donated as being lot No. 5 in block 16 in its entirety, when in fact she did not own the entire property, did not have the effect of striking the entire donation with nullity. Whatever right Mrs. Cane in fact had in and to the property passed to the donee, subject to such rights as third parties had in respect to it. The donor declared that the donation she made was without warranty, she conveying just such title as she had.

If the donor did not own the entire lot, her donee, or those holding under the donee, had the unquestionable right to acquire by purchase the interests in the lot which did not belong to her. Avery v. Allain, 11 Rob. 436.

W. S. Haven, who was one of the purchasers under the donee Mary Hatkinson, purchased from the plaintiffs in this suit, with warranty, all their right, title, and interest in lot No. 5, in order to acquire (should Mrs. Cane have not so owned it) the lot in its entirety. The defendant claims that the effect of this purchase was to have had conveyed to them from their vendors not only the interests which they had then in the property independently of their mother, but also all interest which they, as her forced heirs, might thereafter acquire in respect to so much of her ownership therein as she had donated in excess of her disposable portion.

The district court held that such a pretension was not sustainable in law. In that conclusion we concur. Were this correct, it would enable parties to cut off the rights of forced heirs to their legitime by anticipation prior to the death of their parents. Such a doctrine, we think, is untenable.

The district court proceeded, as we understand, upon the theory that Mrs. Cane, owning an undivided five-sixteenths in the property, and leaving at the time of her death three grandchildren (children of her predeceased daughter), could only have validly conveyed to her donee in the property an ownership of two undivided thirds of this five-sixteenths interest; that, this being so, her forced heirs remained owners of this specific piece of property to the extent of the balance of the five-sixteenths as if she had, in making the donation, disposed to that extent of property not belonging to herself, but to them.

We pretermit any discussion as to what the legal situation would have been between the parties had the property involved in this

litigation been held by the original donee under her act of donation.

Such is not the situation here.

The defendant in this case is not the donee, but a third possessor, and it is with the rights and obligations of parties arising under that condition of affairs that we are called upon to deal.

In Fuzier Herman's Codes Annotés, under article 930. C. N., the following language is used referring to the position of third possessors owning property upon which a right of legitime is claimed: "Il n'est pas douteux que lorsqu'un donataire a aliéné les immeubles compris dans sa donation le tiers acquéreur poursuivi par les héritiers à reserve du donateur peut se soustraire à l'action en revendication de ces derniers en leur offrant en argent la valeur de ces immeubles revendiques qui devraient entrer dans leur reserve. Le tiers acquéreur d'un immeuble n'est tenu suivant le droit commun à restituer les fruits qu'à partir de la demande en reduction formée contre lui sans qu'il y ait lieu d'appliquer à son égard les dispositions de l'article 928." Numerous authorities are cited in support of this proposition.

In Cross on Succession, p. 139, the author says: "It should seem that the proprietary interest attaches after the reserve is established and the property brought back for partition. In case the property exceeds the reserve in value, the heir's interest is only to that extent; and it appears that his right is more a jus ad rem than a jus in re.

"This is shown by the fact that the donee or third possessor in an hypothecary action may keep the property by paying the balance due to the reserve. Civ. Code, art. 1500; Id. 924."

Marcadé in his Treatise on Donations et Testaments (Résumé XXXIV), referring to the effect of the right of reduction of donations has upon mortgages, servitudes, etc., says: "Mais en appliquant rigoureusement cette règle pour les hypothèques servitudes ou charges réelles quelconque dont le donataire aurait pu graver l'immeuble la loi l'adoucit pour le cas d'alienation. Elle contraint alors les héritiers à se contenter d'une somme d'argent representant la valeur du bien et non seulement le tiers acquéreur peut éviter la restitution de l'immeuble en payant cette valeur mais les héritiers ne peuvent même le poursuivre qu'autant que le donataire ne pourrait pas le payer et après avoir constaté l'insolvatilité de celui-ci. (Articles 929, 930.)"

Prosper Vernet in his Traité de Quotité Disponible (pages 499, 500), on this same subject as to the position of third possessors, says: "De là est né un tempérament d'équité qui forme sous l'empire du code une difference importante, entre les tiers qui ont acquis sur l'immeuble atteint par la reduction de simples droits d'usufruit de servitude, ou d'hypothèque, et les tiers au profit desquels il y aurait eu transfert complet de la propriété de l'immeuble. Les hypothèques, servitudes ou autres droits réels consentis par le donataire ou nés de son chef restant soumis à la rigueur du principe; soluto jure dantis, solvitur jus accipientis, et s'évanouissent absolument et dans tous les cas (art. 929) pour les aliénations au contraire, un tempérament d'équité donne aux tiers acquéreurs le droit de renvoyer les demandeurs en reduction à discuter préalablement de donataire dans ses biens (art. 930). Cette discussion doit porter sur tous les biens du donataire, sur les meubles comme sur ses immeubles, et sur les immeubles qui se trouveraient éloignés du lieu de l'ouverture de la succession comme sur ceux qui se trouveraient situés dans le ressort de la même cour impériale. Les termes de l'art. 930 sont généraux, et il n'y a pas lieu de les restreindre sur l'application des dispositions spéciales au bénéfice de discussion accordé à la caution (art. 2021) (I). Il suit de là qu'il faut

décider aussi que les tiers détenteurs sont en tout état de cause admis à opposer l'exception résultant du défaut de discussion et qu'ils ne sont pas tenus de faire l'avance des frais de la discussion qu'ils ont le droit de réquérer. Cela résulte en outre de ce que cette discussion préalable est prescrite par l'art. 930, comme condition de la récévabilité de l'action des héritiers à réserve contre les tiers détenteurs. (2) Il faut même étendre au-delà des termes précis de notre article le tempérament d'équité qu'il a introduit en faveur des tiers acquéreurs, et décider que ces tiers acquéreurs peuvent arrêter l'action dirigée contre eux en offrant de payer la valeur estimative des biens dont les héritiers à réserve poursuivent la revendication. En effet, la pensée de la loi est que la propriété des tiers acquéreurs ne doit pas être sacrifiée à l'intéret, assez faible, que les réservataires peuvent avoir à obtenir les biens en nature plutôt que leur valeur. Par cela seul que l'immeuble donné a été aliéné les héritiers réservataires n'ont plus droit qu'à de l'argent puisque la loi ne leur permet d'agir contre les tiers acquéreurs qu'après discussion préalable des biens du donataire. Si la discussion de ces biens fournissait la valeur estimative du bien donné leur action contre les tiers acquéreurs ne serait plus possible. Or, l'argent de l'un vaut l'argent de l'autre, et dès lors, peu importe que la somme qui manque pour completer leur réserve leur soit fournie par le donataire lui-même ou par les tiers acquéreurs."

The judgment of the court below is, in our opinion, erroneous in assigning to the plaintiff the ownership of an undivided interest in lot No. 5 with the right to the rent thereof to a corresponding extent. The right of the plaintiffs is to call for payment to the amount needed to secure them their legitime from the third possessor to the extent of the value of this property should they elect to pay the same, or to enforce their right through a forced sale thereof should

they refuse to make such payment. The enforcement of their legitime being secured in their favor by a priority and preference— a right higher than a mortgage or privilege; a right resulting from the very tenure under which the third possessors own the property. Bank v. David, 49 La. Ann. 143, 21 South. 174. The property passed out of the ownership of Mrs. Cane into that of Mary Hatkinson subjected to and subordinated to the right reserved by law in favor of the forced heirs (should one have existed), to be so paid or enforced. The property passed from Mary Hatkinson to the later successive purchasers under an ownership also subordinated to the same right of the forced heirs.

It is claimed that the third possessors have acquired the ownership of the property by the prescription of 10 years, but this position is not maintainable. These parties having acquired, quoad the forced heirs, to the extent of the legitime merely, an imperfect ownership in the property subjected to their right, held their right to absolute ownership in the same constantly held in suspense until the delays accorded by law to the forced heirs should have been reached and passed. The law declares that excessive donations made by parents shall have their full effect during the lifetime of the donor. Civ. Code, art. 1503. The donation became, therefore, open to attack only on the death of the donor, and, like all other claims subject to a term or condition, prescription only began to run when the right to a cause of action arose. Civ. Code, art. 732. Five years have not elapsed since the death of Mrs. Cane, and the five-years prescription has not run.

Under the conditions and circumstances in which this case is presented to us we think the proper judgment to be rendered is to affirm the judgment as it stands, with the right reserved, however, to the defendant to elect within 30 days from the time the decree in this case is returned to the

district court whether, instead of recognizing the ownership of the plaintiffs to the interest in the property involved in this litigation which the court decreed to belong to them, she shall pay to the plaintiffs the amount of their legitime, with legal interest from judicial demand herein up to the ascertained value of said interest in the said property; evidence of said election to be filed in the proceedings in the district court in this case. Should this right of election be not made, the present judgment affirming the judgment of the district court will be final. In the event that defendant elects to pay to the plaintiffs in money, then the amount due the plaintiffs for their legitime is directed to be ascertained and fixed in the district court contradictorily between the parties according to article 1505 of the Civil Code, and the defendant shall be adjudged and decreed to pay the same, with legal interest from judicial demand, payment to be decreed secured in favor of plaintiffs by preference and priority. Defendant's rights by reason of improvements and payment of taxes, etc., being expressly reserved; the whole subject to a right of appeal. For the purposes herein stated, this case shall be remanded to the district court for further proceedings according to law. Succession of Hoa, 1 La. Ann. 144.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment of the district court herein appealed from be, and the same is hereby, affirmed, amended, however, so as to make the rent run from judicial demand, subject, however, to the right of election herein reserved to the defendant, and under the conditions thereto attached; and this cause is hereby remanded to the district court for further proceedings according to law. The right of appeal is reserved.

LAND, J., recused, having presided below.