LOTTINGER, Judge.
The factual allegations of the plaintiff’s petition in this suit are as follows:
She and Eugene Willis were married to> each other on November 19, 1928. No separate property was brought by her into the-marriage nor did she acquire any separate-property subsequently, all property owned! by her being a part of the community existing between her and her husband. On December 11, 1943 two lots in the Parish of East Baton Rouge were acquired in her name, the deed of acquisition reciting that the property was being purchased with her separate and paraphernal funds, under her separate management and for her separate estate. Her husband joined in the sale acknowledging the correctness of the recitations just referred to. The husband’s signature was by reason of accommodation, only, he having no knowledge of the meaning of the separate and paraphernality clause. The purchase price was $285.00-cash.
On February 13, 1947 for a recited consideration of $250.00 the plaintiff executed a. sale of the lots to her father, Charles J.. Gordon. While this sale was purportedly-passed before a Notary Public and two witnesses, it was signed by the plaintiff in her home out of the presence of either the witnesses or the Notary. No consideration, whatever was paid by the father as the-plaintiff did not intend to part with her property but merely signed the fictitious, sale in order to assist the father in borrowing money, which was never in fact borrowed.
The father was allowed to live on the-property from approximately the time of' its acquisition on December 11, 1943, without the payment of any rent, until the date-of his death on June 25, 1954. He left a will by which he bequeathed all of his property to his wife, Daisey Sanders Gordon who was appointed as executrix and who-had rented the property since August 10,. 1954 until the date of filing suit.
*87 The prayer is for judgment decreeing the sale dated February 13, 1947 from plaintiff to Charles J. Gordon null and void and for the amount of rental received by the defendant executrix, Daisey Sanders Gordon.
The defendant filed exceptions of no right or cause of action which were referred to the merits. An answer was filed in the nature of a general denial and averring that the property had been acquired by defendant’s ancestor in title on the strength of the public records which cannot now be changed to her detriment.
Subject to the filing of the answer the plaintiff filed a supplemental and amending petition wherein it was set forth that the •deed of February 13, 1947 was procured by fraud and signed through error as the plaintiff was informed by her father that she was merely signing a mortgage or some instrument permitting her father to borrow $250.-:00. The defendant filed a supplemental answer denying the allegations of the amended petition.
A petition of intervention was filed on behalf of Eugene Willis, the plaintiff’s husband, but the order authorizing it was never signed by the trial judge. It appears that the exception of no right of action was taken under advisement and later main-tained, from which ruling the plaintiff has .appealed.
It may be well to point out here that this ’litigation was originally instituted by Eu•gene Willis. His suit was met with an exception of no right of action and a plea of ■ estoppel both of which were maintained by the Lower Court, which ruling was affirmed by us. See Willis v. Gordon, La.App., 94 . So.2d 99.
While, as a matter of practice, exceptions . of no right and no cause of action are frequently filed together, the distinction be- • tween the two is clear. See 9 Tulane Law Review 17. From a reading of the trial judge’s reasons for referring the exceptions to the merits it appears that he : thought the exception of no cause of action to be well taken; however, the actual judgment itself only maintains the exception of no right of action and makes no mention of the former. In order to completely dispose of the matter, therefore, we will pass on both of the exceptions.
The basis of the exception of no right of action is that a wife who is residing with her husband cannot assert an action which belongs to the community, such action being authorized only by the husband. This argument, it strikes us, is begging the question for the reason that one of the issues presented is whether or not the property involved did or did not belong to the community existing between the plaintiff and her husband. It is true, as we have heretofore held, that the husband cannot attack the solemn declaration made by him; however, it would be a denial of justice, we believe, to deny this woman her day in court when it is possible that the assailed deed (the one from plaintiff to her father) could be held null on account of fraud or other grounds.
The principal argument in support of the exception of no cause of action is based on LSA-C.C. Art. 2276 which prohibits parole evidence “against or beyond what is contained in the acts.” Counsel overlooks, however, that here both fraud and error have been alleged and, under these circumstances, parole is admissible, in support of these averments. See Broussard v. Sudrigue, 4 La. 347; W. Cox & Co. v. Estates of King, 20 La.Ann. 209; Jeansonne v. Jeansonne, 187 La. 939, 175 So. 626; Harvey v. Engler, 184 La. 858, 168 So. 81; and McGee v. Finley, La.App., 65 So. 2d 384. Counsel cites the case of Godwin v. Neustadtl, 42 La.Ann. 735, 7 So. 744, 745. The holding in that case is not controlling here, however, for the court there very clearly pointed out that “No fraud, error, violence or other matter affecting the validity of plaintiff’s consent to the authentic act of sale is alleged * * * ”
Lastly, we might mention the defense raised in the answer to the effect that *88 the public records cannot be changed to the detriment of the defendant. In this connection we point out that the defendant is a mere legatee of the deceased, who was a party to the deed sought to be annulled. She has not relied in any way on the public records and is obviously not a third party within the meaning of the rule.
For the reasons assigned the judgment appealed from is reversed and the matter is remanded for trial on the merits.
Judgment reversed and case remanded.